UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
WINTER J. SARGENT,              :
          Plaintiff,            :
                               :
       v.                       :      CA 11-220 ML
                               :
MICHAEL J. ASTRUE,             :
COMMISSIONER OF SOCIAL SECURITY, :
          Defendant.            :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Winter J. Sargent ("Plaintiff") for judicial review of the decision of the Commissioner of Social Security (the "Commissioner"), denying disability insurance benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (the "Act"). Plaintiff has filed a motion to reverse the decision of the Commissioner. See Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Docket ("Dkt.") #8) ("Motion to Reverse"). Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the Commissioner's decision. See Defendant's Motion for an Order Affirming the Decision of the Commissioner (Dkt. #11) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the

Commissioner's determination that Plaintiff is not disabled lacks substantial evidentiary support in the record and is affected by legal error. Accordingly, based on the following analysis, I recommend that Plaintiff's Motion to Reverse be granted and that Defendant's Motion to Affirm be denied.

## Facts and Travel

Plaintiff was born in 1983 and was twenty-five years old as of the alleged onset date of her disability. (Record ("R.") at 14, 170) She did not complete high school but obtained her GED, is able to communicate in English, and has past relevant work as a cashier, deli worker/sandwich maker, department lead in retail, donut finisher, housekeeper, and waitress. (R. at 14, 153, 157)

Plaintiff filed an application for DIB on July 29, 2008, (R. at 114-17), alleging disability since June 20, 2008, due to insulin-dependent diabetes with a pump, fibromyalgia, and migraines, (R. at 152). The application was denied initially, (R. at 7, 54-56), and on reconsideration, (R. at 7, 61-64). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. at 7, 64) A hearing was held on December 9, 2010, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert ("ME") and an impartial vocational expert ("VE"). (R. at 7, 17-47)

On December 22, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at

2

7-16)   The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the ninety days allotted for such review, thus rendering the ALJ's decision the final decision of the Commissioner.   (R. at 1-3)   Thereafter, Plaintiff filed this action for judicial review.

### Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

### Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).   The Court's role in reviewing the Commissioner's decision is limited.   Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).   Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[1] are conclusive.

---

[1] The Supreme Court has defined substantial evidence as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401).

Id. (citing 42 U.S.C. § 405(g)).   The determination of substantiality is based upon an evaluation of the record as a whole.   Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).   The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.   Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).   "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."   Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson v. Perales, 402 U.S. at 399).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[2] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.   See 42 U.S.C. § 423(a).   The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[2] The Administrative Law Judge ("ALJ") found that Plaintiff met the insured status requirements of the Social Security Act (the "Act") through December 31, 2014.   (R. at 9)

be expected to last for a continuous period of not less than 12 months ....” 42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  “An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities.”[3]  20 C.F.R. § 404.1521(a) (2011)[4].  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2011).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled.  See 20

---

[3] The regulations describe “basic work activities” as “the abilities and aptitudes necessary to do most jobs.”  20 C.F.R. § 404.1521(b) (2011).  Examples of these include:

(1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)  Capacities for seeing, hearing, and speaking;
(3)  Understanding, carrying out, and remembering simple instructions;
(4)  Use of judgment;
(5)  Responding appropriately to supervision, co-workers and usual work situations; and
(6)  Dealing with changes in a routine work setting.

Id.

[4] On March 26, 2012, the text of certain sections of the C.F.R. changed.  For example, the former § 1527(d)(1)-(6) has become § 1527(c)(1)-(6).  The Court uses the format and text of the C.F.R. as it existed when Plaintiff filed her Complaint.

5

C.F.R. § 404.1520(a) (2011); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step.  See Seavey, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met . . . her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, (R. at 9); that she had not engaged in substantial gainful activity since June 20, 2008, the alleged onset date, (id.); that Plaintiff's insulin-dependent diabetes mellitus,

6

fibromyalgia, headaches, attention deficit hyperactivity disorder ("ADHD"), major depressive disorder, panic disorder, and generalized anxiety disorder were severe impairments, but her hypothyroidism, sinusitis/rhinitis, hypercholesterolema, kidney infection, urinary tract infection, ear infection, bronchitis, cardiac disorder, and cannabis dependence were not, (R. at 10); that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (id.); that Plaintiff had the residual functional capacity ("RFC") to perform light work with the ability to lift/carry up to 20 pounds occasionally and 10 pounds frequently, sit and stand/walk at least six hours each in an eight-hour workday, with no concentrated exposure to environmental hazards such as unprotected heights or dangerous machinery, with moderate limitation in concentration requiring only simple 1-2 step tasks, and only occasional minor changes in a work setting, (R. at 11); that Plaintiff's medically determinable impairments could reasonably be expected to have caused the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the above RFC, (R. at 12); that she was unable to perform any past relevant work, (R. at 14); that Plaintiff was born on January 12, 1983, and was 25 years old, which is defined as a younger individual age 18-

49, on the alleged disability onset date, (<u>id.</u>); that she had at least a high school education and was able to communicate in English, (<u>id.</u>); that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills, (R. at 14-15); that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, (R. at 15); and that Plaintiff had not been disabled within the meaning of the Act from June 20, 2008, through the date of the ALJ's decision, (<u>id.</u>).

### Errors Claimed

Plaintiff alleges that: 1) the ALJ erred by failing to properly evaluate the treating source opinion of Richard Van Nieuwenhuize, M.D. ("Dr. Van Nieuwenhuize"); 2) the ALJ failed to comply with Social Security Ruling ("SSR") 96-7p in determining Plaintiff's credibility; 3) the ALJ failed to properly evaluate Plaintiff's complaints of pain and fatigue related to her fibromyalgia;[5] and 4) the ALJ's determination at step five was not substantially supported by the record because the VE testified that Plaintiff's limitations and work history were consistent with a

---

[5] The Court will address Plaintiff's second and third claims of errors together as one claim of error challenging the ALJ's credibility determination.

person who could not sustain work.  See Plaintiff's Memorandum in Support of Her Motion for Reversal of the Disability Determination of the Commissioner of Social Security ("Plaintiff's Mem.") at 5, 12, 14, 16.

## Discussion

## I.   The ALJ's Evaluation of Dr. Van Nieuwenhuize's Opinion[6]

On September 21, 2010, Plaintiff's primary care physician completed a Physical RFC Questionnaire ("RFC Questionnaire").  (R. at 406)  In the RFC Questionnaire, Dr. Van Nieuwenhuize indicated

---

[6] Evaluation of opinion evidence is governed by 20 C.F.R. § 404.1527, which provides in relevant part that:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) (2011).  In evaluating medical opinions, an ALJ is directed to consider the existence of an examining relationship, the existence of a treating relationship, the length, nature, and extent thereof, the supportability of an opinion, the consistency of an opinion with the record as a whole, the specialization of the source, and any other factors which the claimant brings to the adjudicator's attention. See 20 C.F.R. § 404.1527(d)(1)-(6).

that Plaintiff had fibromyalgia, (R. at 403); that she was not a malingerer, (R. at 404); that her pain or other symptoms were so severe that they would "[c]onstantly" interfere with attention and concentration needed to perform even simple works tasks, (id.); that Plaintiff was incapable of tolerating even "low stress" jobs, (id.); that she could not walk even one city block without rest or severe pain,[7] (id.); that Plaintiff could sit only for five minutes at one time before needing to get up, (id.); that she could not stand even for five minutes before needing to sit down or walk around,[8] (id.); that Plaintiff could sit and stand/walk less than two hours total in an 8-hour workday, (R. at 405); that Plaintiff would need to take unscheduled breaks hourly during an 8-hour workday and would need to rest "1-2 hrs," (id.), before returning to work, (id.); that she could lift less than 10 pounds only occasionally, rarely lift 10 pounds, and never lift 20 or more pounds, (id.); that Plaintiff's impairments were likely to produce "good days" and "bad days," (R. at 406); and that Plaintiff was likely to be absent from work due to her impairments "[m]ore than four days per month," (id.).

The ALJ gave Dr. Van Nieuwenhuize's opinion "less probative

---

[7] Dr. Van Nieuwenhuize wrote "0" in response to the question: "How many city blocks can your patient walk without rest or severe pain?" (R. at 404)

[8] Responding to the instruction to "circle the hours and/or minutes that your patient can stand at one time, e.g., before needing to sit down, walk around, etc.," (R. at 404), Dr. Van Nieuwenhuize circled "0" minutes, (id.)

weight ....." (R. at 14)   The only reason stated by the ALJ for doing so was that the RFC Questionnaire completed by Dr. Van Nieuwenhuize was "inconsistent with other substantial evidence of record (See: Exhibit 22F)." (Id.)   Problematically, the ALJ did not identify this "other substantial evidence of record." (Id.) His citation to Exhibit 22F is of no assistance, since it is Dr. Van Nieuwenhuize's RFC Questionnaire.   (R. at 403-06)

The Court infers that the evidence to which the ALJ refers is the testimony of the ME, John M. Pella, M.D. ("Dr. Pella"), and the conclusions of the state agency consultants who found that Plaintiff was capable of a range of exertionally light work with hazards restrictions and a "moderate" limitation of concentration with a moderate restriction in the ability to adapt to changes in a work setting. (R. at 14)   The Court bases this inference on the fact that the ALJ stated that he gave "substantial weight" to the evidence provided by Dr. Pella and these consultants. (Id.)   The ALJ cited a physical RFC assessment by Henry Laurelli, M.D. ("Dr. Laurelli"), (R. at 14, 212-27); a psychiatric review technique form and mental RFC assessment by Joseph Litchman, Ph.D. ("Dr. Litchman"), (R. at 14, 290-306); a case analysis by Thomas Bennett, M.D. ("Dr. Bennett"), (R. at 359); and a case analysis by MaryAnn A. Paxson, Ph.D. ("Dr. Paxson"), (R. at 360).

With respect to opinions provided by the non-testifying, non-examining state agency consultants, the First Circuit has

instructed that the amount of weight that can properly be given to such opinions "will vary with the circumstances, including the nature of the illness and in the information provided the expert." Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009).  The Johnson case, which involved a claim of disability based primarily on fibromyalgia and a mental condition (depression and anxiety), id. at 410, has strong parallels to the instant matter.  In Johnson, the First Circuit found that the reasons given by the ALJ for discounting the opinion of the claimant's treating rheumatologist with respect to her physical capabilities to be "significantly flawed." Id. at 412.  The Johnson court also determined that RFC assessments completed by two non-examining physicians opining that the claimant had the capacity for sedentary or light work provided "too cursory a basis upon which to rest a finding that claimant was not disabled." Id.  In reaching this conclusion, the Johnson court examined the RFC assessments made by the physicians and assessed the validity of those assessments.  Id. at 412-13.  Accordingly, this Court proceeds similarly.

Dr. Laurelli, in a February 26, 2009, RFC assessment, found that Plaintiff had the capacity to perform light work.[9]  (R. at

---

[9] Light work is defined as work that

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To

213, 219)  He cited the following facts to support his conclusions:

> 26 yo female 64" 150 lbs BMI 25.6.  Whole body pain with
> mild to moderate TPs consistent with diagnosis FMS.  All
> joints WFL ROM.  No evidence redness, heat, swelling.
> CNS exam normal.  CBC, ESR, LFTs, RA latex, CRP, uric
> acid, lyme all unremarkable.  PCP notes by history 10/08
> to 12/08 suggest resolution, but ROS and exam conflict
> with history.  DO notes no physical problems.  3373 notes
> cl cares for child (feed/play), cleans house, does
> laundry, vacuumc [sic], drives, shops, goes out alone.
> Headaches with no neurologic sequelae.

(R. at 213)

It is true, as Dr. Laurelli noted, that Dr. Van Nieuwenhuize's treatment notes from October to December 2008 reflect some improvement in Plaintiff's fibromyalgia, (R. at 317-28).  That improvement also appears to have lasted into January 2009.  (R. at 314)  However, it is clear that the improvement was not permanent. In March and April 2010, Dr. Van Nieuwenhuize noted that Plaintiff was "still having trouble with chronic pain.  Pt. reports diffuse muscle and joint paint."  (R. at 383, 393)  Although Plaintiff reported on August 2, 2010, "some improvement in chronic pain and fibromyalgia since starting savella," (R. at 375), the last note in the record from Dr. Van Nieuwenhuize is dated October 7, 2010, and it states in part:

---

> be considered capable of performing a full or wide range of
> light work, [plaintiff] must have the ability to do
> substantially all of these activities.  If someone can do
> light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as
> loss of fine dexterity or inability to sit for long periods of
> time.

20 C.F.R. § 404.1567(b) (2011).

13

> Pt reports still having problems with diffuse joint and muscle pains.  Pt does report[] some improvement in fatigue since starting on thyroid medication.  Pt. reports not having labs yet.

(R. at 447)

Thus, Dr. Laurelli's February 2009 RFC assessment appears to have been partially based on a belief that Plaintiff's fibromyalgia had improved and possibly was in the process of "resolution."  (R. at 213)  The record, however, demonstrates that Plaintiff's fibromyalgia did not resolve.

Dr. Laurelli also cited the Function Report (Form SSA-3373-BK) ("Form 3373"), (R. at 140-47), which Plaintiff completed as support for his conclusion, noting that Plaintiff cares for her child, cleans house, does laundry, vacuums, drives, shops, and goes out alone, (R. at 213, 140-43).  While Form 3373 reflects such activity, Plaintiff stated that vacuuming "takes a long time-hard to push," (R. at 142), and that doing dishes, laundry, and vacuuming took over one hour for each activity, (id.).  Plaintiff also stated that she could not lift her arms, (R. at 141), and that it was hard for her to put her hair in a pony tail and to take shirts off,[10] (id.).  Despite these statements, Dr. Laurelli found that Plaintiff could stand and/or walk for about 6 hours in an 8-

---

[10] At the December 9, 2010, hearing before the ALJ, Plaintiff testified that she had problems lifting her arms over her head "every day," (R. at 23), and that she had a hard time putting her hair in a pony tail because her shoulders hurt so badly, (R. at 24).  She further testified that she needed help from her boyfriend in taking off some clothes such as tank tops or shirts "because I just can't reach and pull them off."  (R. at 22)

hour workday and that she had no limitations in her ability to push and/or pull and could lift occasionally up to 20 pounds.  (R. at 213)  The omission of a restriction against overhead reaching raises a question as to how closely Dr. Laurelli read Form 3373.

Accordingly, the Court concludes that Dr. Laurelli's opinion is flawed and cannot be accorded much weight.  Cf. Johnson, 597 F.3d at 412 (finding RFC assessment of state consultant "flawed" where it appeared assessing physician misunderstood the nature of fibromyalgia).

Dr. Laurelli's assessment was affirmed on September 2, 2009, by Dr. Bennett.  (R. at 359)  However, Dr. Bennett's analysis consists of only three sentences:

> 26 year old female with IDDM[11] and fibromyalgia. Multiple tender points on exam.  I have reviewed all of the MER, and the assessment of 2-26-09 is affirmed as written.

(Id.)  The analysis was also made in September 2009 — prior to Dr. Van Nieuwenhuize's 2010 treatment notes which indicate that Plaintiff's fibromyalgia did not resolve as Dr. Laurelli thought might be occurring.  Dr. Bennett's failure to include any restriction on overhead reaching despite Plaintiff's statements in Form 3373 that she could not lift her arms, (R. at 141), raises the question, as it did with Dr. Laurelli, of whether he scrutinized the form.  These facts plus the brevity of Dr. Bennett's analysis

---

[11] IDDM is an abbreviation for insulin dependent diabetes mellitus.

15

prevents this Court from finding that Dr. Bennett's case analysis constitutes substantial evidence.  Cf. Berrios Lopez v. Sec'y of HEW, 951 F.2d 427, 431 (1st Cir. 1991)(finding report of consulting, non-examining physician to constitute substantial evidence where report "contain[ed] more in the way of subsidiary medical findings to support his conclusions concerning residual functional capacity than is customarily found in the reports of consulting, non-examining physicians").

The only other medical evidence in the record which directly addresses Plaintiff's physical capabilities is the testimony of the ME, Dr. Pella.  The First Circuit has held that "the testimony of a non-examining medical advisor—to be distinguished from the non-testimonial written reports ... [by non-testifying, non-examining physicians]—can alone constitute substantial evidence, depending on the circumstances."  Id.  Bearing this holding in mind, the Court considers Dr. Pella's testimony.

In response to a question from the ALJ which sought his opinion of Plaintiff's medical status, Dr. Pella stated:

> Medical record indicates primarily a history of fibromyalgia syndrome with symptom indication in mid '07. She went to a fibromyalgia clinic in, I believe, June '08, and on the basis of symptoms and some mild to moderate tender points, it was diagnosed as having fibromyalgia with a depressive component.  She's been tried on a variety of medications since then with variable effect.  She's also had paresthesias and other complaints, has a fairly extensive neurological workup including MRIs and EMGs, which have been unrevealing, and complaints are primarily subjective in nature.  No strength impairment by examinations.  She has a history

16

of insulin-dependent diabetes without end organ damage at this point in time.  That's at about age 19.  And the remainder of the issues are psychiatric with depression and perhaps panic disorder and ADHD.  **In my opinion, the medical record would limit her to light activity, no unprotected heights and dangerous machinery.  Further restrictions would be related to credibility with regard to the impact of her pain on functioning.**

(R. at 32-33)(bold added).

Since Dr. Pella's review of the record was presumably close in time to the December 2010 hearing before the ALJ, he would have been aware that the improvement in Plaintiff's fibromyalgia which Dr. Laurelli had referenced in his February 2009 assessment had not continued.  He also would have had the benefit of reviewing all of Dr. Van Nieuwenhuize's treatment notes which spanned seventeen months (May 2008 to October 2010) and encompassed some seventeen visits.  These are significant differences from the more limited perspective of Drs. Laurelli and Bennett and could provide a basis for finding that Dr. Pella's opinion constitutes substantial evidence to uphold the ALJ.  However, for the following reasons, the Court concludes that, in the circumstances of this case, Dr. Pella's testimony is insufficient to totally negate the opinion of the treating physician.[12]

---

[12] Although the ALJ stated that he "gave less probative weight to the opinion of Dr. Van Nieuwenhuize ...," (R. at 14), in point of fact, he appears to have given it no weight, at least with respect to Plaintiff's physical capacity.  There is nothing in the ALJ's RFC which appears to be based on or influenced by the RFC Questionnaire completed by Dr. Van Nieuwenhuize.  To the contrary, with respect to physical capacity, the RFC determined by the ALJ appears to be based solely on the opinions of Drs. Laurelli and Bennett.

First, Dr. Pella did not disagree with the limitations found by Dr. Van Nieuwenhuize.  He did not suggest that the limitations were not warranted or at odds with other evidence in the record. Rather, Dr. Pella indicated that the objective findings in the medical record limited Plaintiff to light activity and that "[f]urther restrictions would be related to credibility with regard to the impact of her pain on functioning."  (R. at 33)

Second, the longitudinal record which provided a basis for Dr. Van Nieuwenhuize's opinion was extensive.  He saw Plaintiff at least sixteen times over the course of seventeen months.[13]  (R. at 308, 311, 314, 317, 321, 326, 329, 332, 337, 340, 369, 375, 379, 383, 386, 389, 390, 393, 447, 450)  The length of time that a medical source has been treating an individual is a relevant factor in evaluating the weight to be given to that source's opinion. Johnson, 597 F.3d at 411 (citing 20 C.F.R. § 404.1527(d)(2)(I)). In Johnson, the First Circuit rejected the proposition that a treating relationship which consisted of three visits at roughly three month intervals was "too abbreviated to enable [claimant's treating rheumatologist] to offer an informed opinion about claimant's physical capabilities."  Id.  Here, Plaintiff's treating relationship with Dr. Van Nieuwenhuize is considerably greater than

---

[13] The treatment note for 3/4/09, (R. at 311), reflects that it was electronically signed by "Michelle VanNieuwenhuize, MD," (R. at 312). Thus, Dr. Richard Van Nieuwenhuize may not have seen Plaintiff on this visit.

the treating relationship in <u>Johnson</u> which the Court found sufficient to enable the claimant's treating rheumatologist to offer an informed opinion.

Third, the ALJ has not provided any specific reason for essentially rejecting[14] Dr. Van Nieuwenhuize's assessment other than that it was "inconsistent with other substantial evidence in the record." (R. at 14)  In <u>Johnson</u>, the ALJ provided "several ... reasons," <u>Johnson</u>, 597 F.3d at 411, for giving little weight to the treating rheumatologist's opinion, <u>id.</u>, but the First Circuit found the reasons to be "significantly flawed," <u>id.</u> at 412.  This Court has grave doubts that the First Circuit would find that an ALJ has fulfilled his duty to give good reasons for the weight given to the opinion of a treating physician merely by the conclusory statement that the opinion "is inconsistent with other substantial evidence of record," (R. at 14), without identifying what that evidence is.

Fourth, Plaintiff was examined by two other physicians, Keith W.L. Rafal, M.D. ("Dr. Rafal"), and Dennis J. Aumentado, M.D. ("Dr. Aumentado"), who both agreed that Plaintiff had fibromyalgia.  (R. at 191, 202)  Dr. Rafal opined in a June 26, 2008, letter to Dr. Van Nieuwenhuize that Plaintiff met the "criteria for a diagnosis of fibromyalgia along with [a] history of depression, which I suspect further contributes to some of her symptoms." (R. at 191)  Dr. Aumentado found that Plaintiff had "multiple areas of trigger

---

[14] <u>See</u> n.12.

point tenderness in the anterior chest, across her shoulders, in the cervical spine, thoracic spine[,] and lumbar spine and in the SI joints." (R. at 201)  He also found "trigger point tenderness in the upper arms and forearms, none in the thighs but multiple areas in the calves." (Id.)  Dr. Aumentado noted that Plaintiff had been taking percocet (prescribed monthly by Dr. Van Nieuwenhuize), but she had stopped because it "did not alleviate her pain and was associated with a great deal of nausea ...." (R. at 200-01)  Dr. Aumentado prescribed Cymbalta for Plaintiff. (R. at 202)  Plaintiff was also examined by Albert J. Marano, M.D. ("Dr. Marano"), a neurologist, in May and June of 2010. (R. at 363-66)  Significantly, although Drs. Rafal, Aumentado, and Marano prepared detailed written reports of their examinations of Plaintiff, none of them suggested that her pain was not genuine, that she was exaggerating, or that she was a malingerer. Cf. Johnson, 597 F.3d at 414 (finding ALJ's decision to discredit claimant was not supported by substantial evidence where there were "no instances in which any of claimant's physicians ever discredited her complaints of [chronic, widespread fibromyalgia] pain").

In sum, the Court concludes that the ALJ failed to comply with the social security regulation which requires him to give good reasons for giving less probative weight to Dr. Van Nieuwenhuize's opinion. See Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir.

2010)(stating that the regulation "provides that the agency will 'always give good reasons' for the weight it gives a treating source opinion"). The opinions of the state agency consultants and the ME, in the circumstances presented here, cannot constitute substantial evidence which supports the RFC determination made by the ALJ. Accordingly, the ALJ's decision is affected by legal error and is not supported by substantial evidence. Remand is accordingly required. I so recommend.

In making this recommendation, this Magistrate Judge wishes to emphasize that he is not suggesting that on remand Dr. Van Nieuwenhuize's opinion must necessarily be given greater weight. To the contrary, there are valid reasons why it might not be. For example, Dr. Van Nieuwenhuize indicated that Plaintiff can "rarely," climb stairs. (R. at 406) Yet, Plaintiff testified that she lives on the third floor, (R. at 24), and traverses these stairs daily taking her son to preschool and bringing him back home again, (R. at 26-27). Although Plaintiff indicated that in the month preceding the hearing her son had missed school "[p]robably six or seven," (R. at 27), times because it was too much for her to walk down the stairs, (R. at 26), this would still mean that Plaintiff was able to climb and descend two flights of stairs twice a day most of the time. Such capability casts doubt on Dr. Van Nieuwenhuize's assessment that Plaintiff could engage in such activity only "rarely." (R. at 406)

Similarly, Dr. Van Nieuwenhuize's statement that Plaintiff could not walk even one city block "without rest or severe pain," (R. at 404), also appears at odds with Plaintiff's testimony regarding taking her son to school.   It also appears to be inconsistent with some of Dr. Van Nieuwenhuize's treatment notes which reflect that Plaintiff "[d]enied difficulty in walking." (R. at 315, 318, 322, 327, 330, 333, 338, 341)   Furthermore, some of Dr. Van Nieuwenhuize's responses suggest that he may overstate the degree to which Plaintiff's fibromyalgia affects her.   In addition to indicating that Plaintiff could not walk even one city block without rest or severe pain, Dr. Van Nieuwenhuize opined that Plaintiff's experience of pain and other symptoms during a typical workday would "constantly" interfere with attention and concentration needed to perform even simple work tasks.[15]   (R. at 404)   Relatedly, Dr. Van Nieuwenhuize indicated that Plaintiff could only sit for 5 minutes before needing to get up, (id.), and that she could stand for 0 minutes before needing to sit down, walk around, etc., (id.).   These extremely conservative estimates are at odds with Plaintiff's testimony that she "usually ... [will] have quite a few days in a row that I'm feeling okay and am able to do some things."   (R. at 31)

---

[15]   The RFC Questionnaire provided the following guidance for answering this and other questions on the form: "'rarely' means 1% to 5% of an 8-hour working day; 'occasionally' means 6% to 33% of an 8-hour working day; 'frequently' means 34% to 66% of an 8-hour working day." (R. at 404)

It would also be possible to discount Dr. Van Nieuwenhuize's assessment of Plaintiff's capabilities as at least somewhat inconsistent with the information contained in the consultative examination performed by Wendy Schwartz, Ph.D ("Dr. Schwartz"), on March 12, 2009. (R. at 282-89) Dr. Schwartz noted that Plaintiff "is independent in her cooking, cleaning, shopping, and bill paying." (R. at 286) Dr. Schwartz also noted that Plaintiff drove herself to the examination, (R. at 283), and that she "had on carefully applied makeup ...," (id.).

While it might seem an unnecessary exercise to remand a case to the Commissioner because the ALJ failed to give good reasons for discounting the opinion of a claimant's treating physician when the Court is able to find reasons why the ALJ could have discounted that opinion, it is not the function of this Court to do what the ALJ is required to do. The task of this Court is to review the decision of the ALJ and determine if it is legally correct and supported by substantial evidence. Here, the ALJ's decision is neither legally correct nor supported by substantial evidence. The Court does not consider the error harmless. Accordingly, this matter should be remanded.

## II.  The ALJ's Evaluation of Plaintiff's Credibility and Pain

Plaintiff also contends that the ALJ did not comply with SSR 96-7p in evaluating Plaintiff's credibility, see Plaintiff's Mem. at 12, and that the ALJ failed to properly evaluate Plaintiff's

credibility, <u>see</u> <u>id.</u> at 14.   The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC determined by the ALJ.   (R. at 12) The ALJ explained the basis for his credibility finding in a single sentence:

> In terms of her alleged severe symptoms and disabling limitations, the claimant's extensive daily activities including caring for her son and home while being self-employed doing "odd jobs" for family members during the alleged period of disability is clearly inconsistent with these disabling allegations (SSR 96-7P).

(R. at 13)

With respect to Plaintiff's daily activities as described by Plaintiff, both at the hearing, (R. at 22-31), and in Form 3373, (R. at 140-48), they do not indicate that Plaintiff would be able to perform employment required by the RFC determined by the ALJ. As previously noted, Plaintiff stated in Form 3373 that she could not lift her arms, (R. at 141), and similarly testified that she had problems lifting her arms and needed help pulling off tank tops and shirts, (R. at 22-23).   Plaintiff also testified that it took her a long time to do the laundry, (R. at 23), and that she sometimes had a hard time picking up a gallon of milk, (R. at 24). The latter statement strongly suggests that her ability to lift on a regular basis was limited to items weighing less than a gallon of milk.   (<u>Id.</u>)   Accepting Plaintiff's testimony and answers on Form 3373 at face value, she was not able to do the work required by the

ALJ's RFC.  Thus, the Court does not find that her "extensive daily activities," (R. at 13), constitute substantial evidence for finding her not credible.

The other reason cited by the ALJ, namely that Plaintiff admitted that she was self-employed doing "odd jobs' for family members off and on during the alleged period of disability is more substantial.[16]   (Id.)   Plaintiff in her memorandum attempts to characterize the income which she received from this self-employment as being "essentially charity bestowed upon her by family members." Plaintiff's Mem. at 14.  However, this Court is limited to the evidence in the record before the ALJ, not a record augmented by Plaintiff's post-hearing characterization of facts in that record.[17]   Thus, the Court finds this reason for discounting Plaintiff's testimony to have some validity.

Nevertheless, Plaintiff's ability to do odd jobs does not necessarily conflict with her testimony that she had good days and bad days.  (R. at 30-31)  Thus, the Court finds that the reasons given by the ALJ for finding Plaintiff not fully credible to be

---

[16] In 2009, Plaintiff had earnings of $5,495.00.  (R. at 122)

[17] Regarding her earnings in 2009, Plaintiff testified:

For 2009, I -- my family members were helping me out because they know I'm struggling with paying my bills and stuff.  So if they had an odd job, they would have me go and do it randomly. It wasn't a day-to-day thing.  Just I helped clean my mom's house, my aunt's house, watching some of my aunt's kids, cousins and stuff.  But it wasn't a daily thing.

(R. at 29)

rather thin.  If, on remand, the ALJ finds Plaintiff not credible, he should fully explicate his reasons for doing so.

Similarly, the ALJ's analysis of Plaintiff's pain and his compliance with the requirements of <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19 (1st Cir. 1986), in his decision, (R. at  12-14), is marginal at best.  On remand, the ALJ should fully discuss Plaintiff's pain in accordance with <u>Avery</u> and SSR 96-7p.[18]  In particular, the ALJ should fully address the side effects of Plaintiff's fibromyalgia medication in light of Dr. Van Nieuwenhuize's statement that Plaintiff was "not [to] operate heavy machin[e]ry including [a] car while on medications," (R. at 451). Relatedly, the Court notes that Dr. Laurelli cited the fact that

_____

[18] SSR 96-7p requires that the ALJ consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements:

    1.    The individual's daily activities;
    2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
    3.    Factors that precipitate and aggravate the symptoms;
    4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
    5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
    6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
    7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; see also Avery, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2011) (same).

Plaintiff was able to drive in concluding that her fibromyalgia did not prevent her from performing light work, (R. at 213).

Again, however, this Magistrate Judge emphasizes that he is not intending to suggest that on remand Plaintiff should be found credible.  There is evidence in the present record which would warrant finding her not credible (although it was not cited by the ALJ).  First and foremost, it appears that Plaintiff may have lied in her testimony when she denied using illegal drugs.  (R. at 25) On April 19, 2010, Plaintiff told her treating psychiatrist, Walter D. Fitzhugh, III, M.D. ("Dr. Fitzhugh"), that she was having a problem with her short term memory.  (R. at 408)  Dr. Fitzhugh noted that she was "still smoking pot."[19]  (Id.)

Second, Plaintiff was not truthful with some of the examiners regarding her use of marijuana.  Only three weeks before Plaintiff indicated to Dr. Fitzhugh that she was still smoking pot, Plaintiff told Dr. Schwartz that she had abused drugs in her teenage years, including marijuana, cocaine, ecstasy, and acid but that she had "stopped years ago."  (R. at 286) Similarly, little more than a month after admitting to Dr. Fitzhugh that she was still smoking pot, Plaintiff denied to Dr. Marano on May 25, 2010, that she used illegal drugs.  (R. at 363)  When Plaintiff was examined by Dr.

---

[19] Somewhat incongruently, the ALJ found that Plaintiff's "cannabis dependence ...," (R. at 10), was not a severe impairment, (id.), but also noted, without further comment, that "[t]he claimant allegedly ... does not use illicit drugs," (R. at 12).

Aumentado in January 2009, she related "a history of cocaine and marijuana abuse but none recently." (R. at 201)   While it is possible that at the time Plaintiff denied recent marijuana use to Dr. Aumentado she had not yet resumed "smoking pot," (R. at 408), her inconsistent answers regarding marijuana use cast doubt on her credibility.

It also appears that Plaintiff was not complaint with treatment instructions.   Dr. Van Nieuwenhuize's records reflect multiple instances of this.[20]   The Court may take into consideration a claimant's failure to treat or seek treatment for her subjective complaints.   See Orlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991).

## III.   The ALJ's Step Five Determination

As the Court has determined that this matter should be remanded for the reasons already stated, extended discussion of Plaintiff's final claim of error is unnecessary.   Moreover, the claim is meritless as it ignores the fact that the VE testified that there were jobs in the economy which a claimant with the RFC described by the ALJ in his hypothetical could perform. (R. at 42) Accordingly, this claim of error should be rejected.

---

[20]   Plaintiff has failed to follow instructions regarding her medication and treatment. (R. at 200, 347, 370, 375, 376, 383, 384, 387, 391, 395, 407, 410, 447, 448)   Dr. Fitzhugh noted on November 16, 2009, just weeks before Plaintiff saw Dr. Aumentado, that she had been "off all her med x months" and would not "start over [with] meds." (R. at 410)

## Summary

The ALJ's decision to give less probative weight to the opinion of Plaintiff's treating physician, Dr. Van Nieuwenhuize, is not supported by substantial evidence and constitutes legal error. Specifically, the ALJ failed to explicitly identify the "other substantial evidence of record," (R. at 14), with which the doctor's opinion was allegedly inconsistent. Thus, the ALJ failed to "give good reasons" for the weight he afforded Dr. Van Nieuwenhuize's opinion as required by 20 C.F.R. § 404.1527(d)(2). Applying the teachings of <u>Johnson v. Astrue</u>, 597 F.3d 409 (1st Cir. 2009), the opinions of the state agency consultants and the ME, in the circumstances of this case, cannot constitute substantial evidence which supports the ALJ's RFC determination.

The ALJ's evaluation of Plaintiff's credibility and her pain was also marginal.  On remand, if the ALJ finds Plaintiff not credible, he should fully explicate his reasons for doing so, and he should ensure that his decision reflects full compliance with the requirements of <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19 (1st Cir. 1986) and SSR 96-7p.

In recommending that this matter be remanded, the Court emphasizes that it is not suggesting that on remand the opinion of Dr. Van Nieuwenhuize must necessarily be given greater weight or that Plaintiff should be found credible.  To the contrary, valid reasons can be found in the record why Dr. Van Nieuwenhuize's

29

opinion might be entitled to less probative weight and why Plaintiff might be deemed less than fully credible. However, the ALJ did not cite any of these reasons in his decision, and it is not the function of this Court to perform tasks which are the responsibility of the ALJ.

### Conclusion

The ALJ's determination that Plaintiff is not disabled within the meaning of the Act lacks substantial evidentiary support in the record and is affected by legal error. Accordingly, I recommend that Plaintiff's Motion to Reverse be granted and that this matter be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation. I further recommend that Defendant's Motion to Affirm be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/  *David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
September 20, 2012